IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 8, 2013

**BRANDON OSTEIN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3083     Monte Watkins, Judge**

_____

**No. M2012-02683-CCA-R3-PC - Filed November 20, 2013**

_____

Petitioner, Brandon Ostein, pleaded guilty to possession of over 300 grams of cocaine with intent to sell in a drug-free school zone. In accordance with petitioner's plea agreement, the trial court imposed the minimum sentence of fifteen years to be served at one hundred percent in the Tennessee Department of Correction. Petitioner filed the current petition for post-conviction relief, in which he alleged that he received ineffective assistance of counsel and that his guilty plea was not entered knowingly, voluntarily, or intelligently. Following an evidentiary hearing, the post-conviction court denied relief. On appeal, petitioner argues that he received ineffective assistance of counsel when trial counsel: (1) failed to communicate with petitioner prior to his entering the guilty plea and (2) failed to properly advise him regarding his sentencing range. He further argues that these errors, compounded with the trial court's failure to inform him of the applicable range of punishment, rendered his guilty plea involuntary. Following our review of the parties' arguments, the record, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

C. Dudley Lightsey, Brentwood, Tennessee, for the appellant, Brandon Ostein.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Facts

Petitioner was indicted for possession of over 300 grams of cocaine with intent to sell in a drug-free school zone and for possession of drug paraphernalia. He pleaded guilty on July 1, 2010.

### A. Guilty Plea Hearing

The factual basis underlying appellant's guilty plea can be summarized as follows: On November 10, 2005, police officers, while executing a search warrant on a co-defendant's home, apprehended petitioner when he attempted to flee the residence. Police officers found over 300 grams of cocaine, numerous boxes of baking soda, weapons, money, and digital scales in the home. Petitioner claimed the money in the house but disavowed knowledge of the weapons or drugs; however, petitioner possessed a key to the residence. In addition, when a co-defendant was asked about the drugs in the residence, the co-defendant told the police they should ask petitioner. The State noted that the proof would show that the residence was within 1000 feet of Carter-Lawrence Magnet Elementary, a public school in Davidson County.

After hearing these facts, petitioner conceded that the facts were substantially true and pleaded guilty to possession of over 300 grams of cocaine with intent to sell in a drug-free school zone. Petitioner also stated that he had been able to communicate with his attorney and was satisfied with her representation. He acknowledged that he had a right to a jury trial, to confront witnesses, and to testify or not testify at trial, but petitioner chose to waive those rights. Petitioner responded affirmatively when asked if he had reviewed the plea agreement with his attorney, stating that he understood and had no questions regarding the contents of the agreement. Finally, petitioner acknowledged his signature on the plea agreement and affirmed that he had signed the document freely and voluntarily.

### B. Post-Conviction Hearing

Petitioner filed this petition for post-conviction relief on March 14, 2011. The post-conviction court held an evidentiary hearing on February 22, 2012.

Petitioner testified first at his post-conviction hearing. He stated that he retained trial counsel in 2006. While he was unable to remember if trial counsel ever met with him to discuss his charges, he conceded that trial counsel visited him once in 2006. He claimed that between 2006 and April 2010, he only saw trial counsel for a total of ninety minutes. He

-2-

stated that trial counsel visited the jail where he was incarcerated one time and sent him "a couple of motions." However, petitioner asserted that trial counsel never discussed her trial strategy with him and that he attempted to call her office and leave messages, but he was unable to contact her.

Petitioner testified that on April 16, 2010, the Friday prior to his trial, trial counsel told him that the State had offered him fifteen years to be served at one hundred percent, and that otherwise, he could be sentenced to sixty years to be served at one hundred percent. He discussed this offer with his mother and decided to accept it. He entered the guilty plea before the trial court, but he claimed that the trial court never discussed the possible minimum and maximum sentences for his offenses. After the guilty plea hearing, petitioner researched his case at the prison library and determined that his sentence was inappropriate.

On cross-examination, petitioner conceded that he was on bond for about a year and a half while this case was pending, but he did not visit trial counsel's office. Petitioner went to several court appearances with trial counsel during the pendency of this case, but he asserted that trial counsel never discussed any plea offers with him. He assented to understanding the terms of the plea agreement at the guilty plea hearing and to telling the judge that he was satisfied with his lawyer's performance. He also conceded that trial counsel reviewed the plea agreement with him line by line. On re-direct examination, petitioner introduced the Petition to Enter a Plea of Guilty, which stated that the range of punishment was fifteen to sixty years at one hundred percent; however, he could not remember that range being written on the form when he entered the guilty plea.

Annie Davis, petitioner's mother, testified that on April 16, 2010, she spoke to petitioner on the telephone about a proposed plea agreement. She remembered petitioner's telling her that the State had offered him fifteen years to be served at one hundred percent and that if he did not accept the offer, he could serve sixty years at one hundred percent. She claimed that her son only accepted the fifteen-year offer because he believed he could be sentenced to sixty years. Ms. Davis testified that she knew trial counsel from petitioner's court appearances but claimed that they never discussed the trial at the appearances. Ms. Davis stated that even though she was not the client in the case, she and her friends called trial counsel "over and over again" about the case but that trial counsel did not reply to the telephone calls. Ms. Davis testified that at least one time, trial counsel informed her about one of petitioner's upcoming court dates.

On cross-examination, Ms. Davis was unable to clearly remember being called as a witness at one of petitioner's hearings, what year petitioner accepted the guilty plea, the time of day when she received the call about the plea agreement from petitioner, or how long petitioner had been incarcerated when he accepted the plea agreement. However, Ms. Davis

-3-

testified that she remembered calling trial counsel "at least two to three times a week, or more." She also stated that she "would call [trial counsel] back to back constantly" and leave messages.

Trial counsel testified next that she had been an attorney since 1992 and that she had been a criminal defense attorney for eighteen years. She testified that she had represented clients in jury trials on charges ranging from criminal trespass to capital murder. She stated that while petitioner was on bond during this case, he would visit her office to deliver his payments and to tell her about his new criminal charges. When asked whether ninety minutes of communication over the course of this case was a correct estimate, trial counsel responded, "Grossly understated, yes. A little bit offensive, but yes." She stated that she familiarized herself with the case and represented petitioner to the best of her ability. She testified that she filed "numerous" motions and represented petitioner on an interlocutory appeal to the Tennessee Court of Criminal Appeals and the Tennessee Supreme Court, at no charge.

Trial counsel asserted that she kept both petitioner and his mother apprised of the case. Trial counsel stated that Ms. Davis, petitioner's mother, was a "very concerned mother." Trial counsel explained that she called Ms. Davis to tell her about court dates and that Ms. Davis called her office frequently. Trial counsel also represented petitioner in an unrelated case for which petitioner was arrested while on bond in this case. Trial counsel conferred with another attorney, who was representing petitioner on a third charge. Trial counsel researched petitioner's criminal history and determined that he was a Range I, standard offender. She explained the full range of punishment for this crime, which was fifteen to sixty years, to petitioner and then explained that because he was a Range I offender, his possible sentence would be between fifteen and twenty-five years. Trial counsel testified that most of the guilty plea agreements listed the full range of punishment and were not range specific to each defendant.

Trial counsel stated that on the day petitioner entered his guilty plea, both she and petitioner were present. She stated that initially the State would only offer petitioner the maximum sentence, twenty-five years to be served at one hundred percent. However, after negotiations were completed, the State offered petitioner the minimum sentence, fifteen years, for the charge related to possession of over 300 grams of cocaine with intent to distribute in a drug-free school zone and offered to dismiss petitioner's drug paraphernalia charge. Trial counsel stated that if the case had gone to trial, there was a reasonable probability that petitioner would have been found guilty based on the evidence. She also stated that the home where the drugs were found was clearly within the school zone area, so she could not contest the school zone enhancement.

-4-

Trial counsel testified that she fully explained the State's offer and the resulting paperwork to petitioner. Petitioner called his mother, and trial counsel explained the offer to his mother, which his mother said he should accept. Trial counsel asserted that she never mentioned sixty years as a possible sentence during this discussion. Trial counsel stated that petitioner should not have gotten the impression that he could be sentenced to sixty years from her explanation of the case. Trial counsel testified that she told petitioner she was ready for trial if he chose that avenue but that she thought he could be convicted and might receive more than the minimum sentence based on his other two arrests while on bond. Petitioner accepted the offer.

On cross-examination, trial counsel testified that she communicated with petitioner by telephoning him, by visiting the jail where petitioner was incarcerated, and by speaking with him at his court hearings. She conceded that she did not keep time sheets while representing petitioner. She stated that she answered all of petitioner's questions when reviewing the plea petition.

Following the hearing, the post-conviction court denied the petition for post-conviction relief by written order. The court discredited petitioner's testimony and found that petitioner had failed to prove that trial counsel was ineffective in advising him about the plea petition and in communicating adequately with him during the pendency of the case.

## II. Analysis

On appeal, petitioner argues that his trial counsel provided ineffective assistance by failing to communicate with him prior to his entering the guilty plea and failing to properly advise him regarding his sentencing range. He further argues that his guilty plea was not entered knowingly, voluntarily, or intelligently due to trial counsel's errors, compounded by the trial court's failure to inform him of the applicable range of punishment. The State responds that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

### A. Ineffective Assistance of Counsel

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the

correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

### 1. Failure to Communicate

The post-conviction court concluded that petitioner failed to prove that trial counsel neglected to communicate with him. This determination is supported by the record. Prior to the date of petitioner's guilty plea hearing, the record reflects that trial counsel met with petitioner once while he was incarcerated, sent him "a couple of motions," attended multiple court hearings with him, and kept petitioner and his mother apprised of the case. Trial counsel stated that for the year and a half that petitioner was on bond in this case, he would visit her office to deliver his payments and to tell her about his new criminal charges.

Petitioner emphasizes that trial counsel did not keep time records that would prove she conferred with petitioner while she was representing him. However, trial counsel testified that she conferred with petitioner and the post-conviction court credited her testimony. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). The post-conviction court determined that petitioner's allegations lacked credibility. We will not disturb that conclusion on appeal. *Dellinger*, 279 S.W.3d at 292. This argument is without merit.

### 2. Failure to Explain Petitioner's Sentencing Range

The post-conviction court concluded that petitioner failed to prove that trial counsel improperly explained petitioner's sentencing range before petitioner entered his guilty plea. The record supports this determination. Trial counsel testified that on April 16, 2010, the State offered petitioner the minimum sentence of fifteen years at one hundred percent and

offered to dismiss his drug paraphernalia charge. Trial counsel further testified that she explained the offer to petitioner and his mother and explained to petitioner that he could only be sentenced to fifteen to twenty-five years of incarceration because he was a Range I offender. Petitioner testified that trial counsel did not explain his Range I status; however, the post-conviction court specifically discredited petitioner's testimony. This factual finding was based on a credibility determination and will not be disturbed by this court. *Dellinger*, 279 S.W.3d at 292. Furthermore, at the guilty plea hearing, petitioner testified that he had been able to communicate with his attorney and was satisfied with her representation.

Petitioner emphasizes that trial counsel's performance was deficient because, in paragraph six of the plea petition, she wrote that petitioner's sentencing range was fifteen to sixty years. However, trial counsel stated that, in her experience, most guilty plea agreements listed the full range of punishment and were not specific to a defendant's range. Furthermore, in petitioner's testimony, he stated that he could not recall if that language was in the document when he executed his guilty plea. Thus, he has not shown that this language affected his decision when entering the guilty plea. Because trial counsel explained petitioner's Range I status to him, this argument is without merit. To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn*, 202 S.W.3d at 116). Petitioner has failed to show deficient performance. Trial counsel's communication with petitioner and explanation of petitioner's sentencing range were not proven to be ineffective.

## B. Guilty Plea

Petitioner argues that his guilty plea was not entered knowingly, voluntarily, and intelligently because his trial counsel and the trial court failed to inform him of the mandatory minimum and maximum sentence that he could serve if convicted at trial. Petitioner states that the trial court's error in conjunction with trial counsel's failure to properly advise petitioner renders his guilty plea constitutionally infirm, and therefore, it should be set aside. The State responds that petitioner's guilty plea passes constitutional muster. We agree with the State.

A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative

courses of action open to the defendant." *Id*. Courts should consider the following factors when ascertaining the validity of a guilty plea:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Id.* (quoting *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id.* (quoting *Blankenship*, 858 S.W.2d at 904).

To ensure that defendants' guilty pleas are voluntarily, knowingly, and intelligently entered, Rule 11 of the Tennessee Rules of Criminal Procedure sets forth, in pertinent part, the requirements for guilty pleas:

> Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:
>
> (A)    The nature of the charge to which the plea is offered;
>
> (B)    the maximum possible penalty and any mandatory minimum penalty;
>
> (C)    if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;
>
> (D)    the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E)    the right to a jury trial;

(F)    the right to confront and cross-examine adverse witnesses;

(G)    the right to be protected from compelled self incrimination;

(H)    if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I)    if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J)    if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

Tenn. R. Crim. P. 11(b)(1). The trial court must substantially comply with the procedures of Rule 11 of the Tennessee Rules of Criminal Procedure. *State v. Newsome*, 778 S.W.2d 34, 38 (Tenn. 1989).

Petitioner relies on Rule 11 of the Tennessee Rules of Criminal Procedure, which requires, in part, that the court must determine if a defendant understands "the maximum possible penalty and any mandatory minimum penalty," to support his argument. Tenn. R. Crim. P. 11(b)(1)(B). Petitioner states, and the record confirms, that the trial court did not inform him of his possible minimum and maximum sentences if convicted. However, a violation of Criminal Procedure Rule 11 is not necessarily constitutional in nature because Rule 11 was promulgated by the Tennessee Supreme Court pursuant to the Court's supervisory authority. *See State v. Mackey*, 553 S.W.2d 337, 340-41 (Tenn. 1977), *superseded on other grounds by rule*, Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). This court has stated:

[U]nder *Boykin v. Alabama* . . . , a guilty plea must be voluntarily, understandingly, and intelligently entered in order to withstand [a]

constitutional challenge. *Boykin* requires at minimum that a criminal defendant be warned of his constitutional rights to trial by jury, to confrontation, and to protection against self-incrimination, in order to establish affirmatively that his plea was voluntary and intelligent.

*State v. Miller*, 634 S.W.2d 615, 618 (Tenn. Crim. App. 1981). It is clear, based on the record, that the trial court advised petitioner of his right to a jury trial, to cross-examine witnesses, and to testify or not testify. Therefore, we conclude that a constitutional violation did not occur due to the trial court's omitting to inform petitioner of his possible minimum and maximum sentences if convicted. As previously stated, to obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Thus, because the trial court's omission of Criminal Procedure Rule 11(b)(1)(B) is not an abridgement of any constitutional right, standing alone it is not sufficient to grant petitioner relief in a post-conviction proceeding.

Petitioner concedes that this omission does not singularly rise to the level of a constitutional violation but claims that compounded with trial counsel's errors, the trial court's omission "deprived the petitioner of fairness, justice and the ability to make a knowing, voluntary and intelligent plea." However, because we have previously determined that trial counsel was not deficient, his argument is without merit. As explained above, petitioner failed to prove ineffective assistance of counsel. Trial counsel testified that she explained the plea offer to petitioner as well as advised him about the likelihood of conviction and his possible range of punishment. Moreover, petitioner's testimony at the post-conviction hearing was in direct conflict with his testimony at the guilty plea hearing. At the guilty plea hearing, petitioner confirmed that he had reviewed the plea agreement with his attorney and claimed that he understood and had no questions regarding the contents of the agreement. "A petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Furthermore, the post-conviction court specifically discredited petitioner's testimony at the post-conviction hearing. Based on the record and the credibility determinations of the post-conviction court, petitioner has failed to prove that his guilty plea was not entered knowingly, voluntarily, and intelligently due to errors by either trial counsel or the trial court.

## CONCLUSION

Based on the parties' arguments, the record, and the applicable law, we affirm the judgment of the post-conviction court.


_____
ROGER A. PAGE, JUDGE